## ROBY MOTORS CO. v. CADE.
### No. 4956.

Court of Appeal of Louisiana. Second Circuit.
Feb. 5, 1935.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant.

Wallace & Hardeman, of Benton, for appellee.

TALIAFERRO, Judge.

On June 2, 1932, plaintiff sold to defendant a secondhand Chevrolet truck for the price of $375, including carrying charges. Against this price plaintiff accepted defendant's old car at a value of $175; leaving a balance due of $200, for which defendant gave his note, payable in semimonthly installments of $12.50, secured by chattel mortgage on the truck. This note has been reduced to $127.40.

On June 4, 1932, defendant executed his promissory note to plaintiff for $57.50, payable in biweekly installments of $3.60. It has been reduced to $39.60. It represents the price of casings, tubes, etc., sold by plaintiff to defendant, and is secured by chattel mortgage on said truck and a trailer.

On July 21, 1932, defendant gave plaintiff another promissory note for $44.55, due August 20th following, which was also secured by mortgage on said truck and trailer. This note was given to liquidate an account for parts furnished to and labor performed on said truck by plaintiff at defendant's request.

All of these notes bear 8 per cent. interest after maturity and contain the usual provision for payment of attorney's fees of 15 per cent. in event collection is sought by suit.

Plaintiff, being the holder and owner of said notes, filed this suit thereon to foreclose the mortgages via ordinaria and caused the truck and trailer to be sequestered.

While defendant admits execution of the notes and mortgages securing same, he denies that he is legally obligated to pay them. He avers that plaintiff warranted the car to be a 1930 model and to be in good mechanical condition when sold to him, neither of which, it is alleged, was true; that defects in the truck manifested themselves shortly after the purchase thereof, and it was continuously out of repair thereafter; that he was not in a position to know said conditions, he not being a car mechanic; that said defects were of so serious a nature that he would not have purchased the truck had he been aware of their existence. He prays that plaintiff's demands be rejected, that the sale of the truck be rescinded, and the notes sued on be canceled.

The court a quo gave judgment for defendant as by him prayed for, notwithstanding the two smaller notes sued on did not represent a part of the purchase price of the truck. Plaintiff appealed from the judgment dismissing its suit.

Plaintiff purchased the truck to haul logs. Before it was delivered to him, on day of sale, one of his employees drove it about the city to determine its mechanical condition. He thought it was all right. The trade was closed and hauling of logs on the truck and attached trailer began. We are satisfied, from the testimony on the question,

that the average load put on the truck and trailer was far in excess of that which they were designed to carry; and especially do we think this is true in view of the fact that both vehicles had been used for more than two years. The truck's capacity originally was only one and one-half tons and the trailer's was supposed to be the same. It is established that logs weighing over eight thousand pounds were often hauled. The practice of overloading the vehicles on rough dirt roads resulted, we think, in the collapse of the mechanical set-up of the differential gear, on or about July 21st, some 49 days after purchase of the truck. It was for labor and parts necessary to repair this breakdown that the note of $44.55 was given by defendant. It appears, however, that before this time the truck was not operating satisfactorily. Several times it was brought to plaintiff's garage for minor repairs. These were done at defendant's expense, excepting in first instance. It could not have been expected to have given the service, or the near service, a new one would have given. The price paid for it was less than half the cost of a new one. It appears that for over three months defendant paid the installments due on the purchase note regularly. It does not appear that during this period he ever demanded of plaintiff a rescission of the sale, or objected to making the payments as they fell due. On the question of fact above discussed, viz., whether the truck was in good running condition when sold, such condition as would be reasonably expected of it in view of its age and past use, we think the case with plaintiff. Beyond this, we think plaintiff should prevail in its demands under the terms of the sale itself.

██ In the written order to plaintiff for purchase of the truck and trailer, signed by it and defendant, appears the following, viz.:

"It is agreed that any used car purchased under this order is sold as is; we do not guarantee. Any adjustments or repairs made from this day on will be charged for. We do not guarantee the mileage or model."

So far as our search has extended, we have found no decision of the courts of this state interpreting the expression "as is" in a sale of a secondhand, used motor vehicle. Jurisprudence of other states throws very little light on the same. Berry, in his work on Automobiles, vol. 2, p. 1412, commenting on a contract of sale of a secondhand truck involved in a case arising in California, wherein the expression was employed, has this to say:

"Sale 'as is.' The agreement, however, does say that the truck is sold 'as is'. Just what these words imply has not been fully treated in the reports. * * * According to the use of the word, particularly in catalogues of secondhand books, furniture, or such like articles, its use implies that the buyer takes a chance in making the purchase. It seems to imply the thought that the buyer is taking delivery of goods in some way defective, and upon the express condition that he must trust to his own examination. The very words 'as is', taking this contract as a whole, would cause a person to know that the seller meant to say to the buyer, 'You look the article over, and, if you buy it, you do so at your risk.' It means much the same as saying, 'If you buy you take the article with all its faults.' We believe that, as a matter of law, under the facts as this record shows them to be, the defendant must be held to have accepted this truck, without the guaranties of which he complains accompanying the transfer."

We think this interpretation correct. It is pertinent to the case at bar. This language was inserted in the order for a purpose, or else it would not have been put in it. Certainly, one buying a secondhand truck for less than one-half the price of a new one is put on guard as to the possibility of it not giving first-class service. The doctrine of caveat emptor applies. Knowledge that secondhand motor vehicles, which are two or more years old, do not give the efficient service that new ones do, is common. A used car or truck, in running condition, may give satisfactory service in one line of business, whereas it would not do so in another line. Road conditions, manner of operation, and character of traffic and loading enter into the case. In addition to all this, it is specifically provided in the order for the truck that the seller does not guarantee. This relates back to the words "as is," and each throws light on the meaning of the other as employed in the contract. It certainly means that beyond the truck being in running condition, its qualities for specific service were not warranted. This is made clearer by the statement that "any adjustments or repairs made from this day on will be charged for." Defendant accepted the truck "as is," with waiver of warranty on part of the seller. Warranty in sales of engines, vehicles, etc., may be waived. Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871.

In Fee v. Sentell, 52 La. Ann. 1957, 28 So. 279, 280, it was held that:

"Unless warranty is waived, the vendor warrants the thing sold as fit for the purpose intended."

The converse of the principle is equally true.

The case of Houston-Long Co., Inc., v. Faircloth, reported in 18 La. App. 423, 137 So. 591, cited and relied on by defendant, is not applicable. In that case the car was not sold "as is," and there was no waiver of warranty of any character in the contract of sale.

For the reasons herein assigned, the judgment appealed from is annulled, reversed, and set aside, and the law and evidence being in favor of plaintiff, Roby Motors Company, Incorporated, and against defendant, Dr. S. C. Cade, it is now ordered, adjudged, and decreed that said plaintiff do have and recover judgment against defendant in and for the following amounts, viz.:

1. For $127.40 with 8 per cent. per annum interest thereon from February 2, 1933;

2. For $39.60 with 8 per cent. per annum interest thereon from February 4, 1933;

3. For $44.55 with 8 per cent. per annum interest thereon from August 20, 1932; and

4. For 15 per cent. of said amounts, principal and interest, as attorney's fees.

It is further ordered, adjudged, and decreed that the chattel mortgages sued on, copies of which are attached to plaintiff's petition, on the truck and trailer therein described, and the writ of sequestration herein sued out, be and they are hereby recognized, maintained, and rendered executory on said property, which is hereby ordered sold, according to law, to pay this judgment; and from the proceeds of such sale plaintiff shall be paid by preference and priority over other creditors.