C. D. SMITH DRUG COMPANY v. THE FIRST NATIONAL BANK OF EMPORIA.

No. 11046.

1. CHATTEL MORTGAGE—*Intoxicating Liquors—Knowledge of Mortgagee.*  When the validity of a chattel mortgage upon a stock of drugs and druggist's sundries is challenged upon the ground that it covers a quantity of intoxicating liquor, and was taken by a person who did not have a permit to sell such liquor, to secure a debt due to him, and the description of the mortgaged goods is general and does not specifically mention intoxicating liquor, it is competent for the mortgagee to testify that when he took the mortgage he did not know or understand that such liquor was included in the stock upon which the security was taken.

2. ———— *Intoxicating Liquors—Invalid Mortgage.*  While a druggist who has no permit to sell intoxicating liquors may lawfully keep and use them for the purpose of compounding for sale tinctures, medicines, and other non-intoxicating ingredients, yet his right to do so does not justify a mortgage of them for the purpose of securing a debt due to a creditor who has no permit to engage in their sale.

Error from Lyon district court; W. A. RANDOLPH, judge.   Opinion filed January 7, 1899.   Reversed.

*J. Harvey Frith*, and *Phillip, Smith & Street*, for plaintiff in error.

*I. E. Lambert*, and *L. B. Kellogg*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J. : One B. Wheldon, a druggist, was indebted to the First National Bank of Emporia, to secure which he executed a chattel mortgage upon property described as follows :

"All of the stock of goods, wares and merchandise in the store lately occupied by B. Wheldon, in the city of Emporia, Lyon county, Kansas, located at lot No. 196 Commercial street, together with the furniture, fixtures and other personal property connected with and heretofore used in the drug-store business of the said B. Wheldon, the same being a general stock of drugs, medicines, paints, oils, druggist's sundries, toilet articles and miscellaneous goods as are usually contained in a drug-store."

The bank took possession of the property by virtue of the terms of the mortgage. The C. D. Smith Drug Company was an unsecured creditor of Wheldon. It sued for the recovery of its debt and levied upon the property mortgaged to the bank. The bank thereupon brought replevin for the recovery of the property. The drug company defended the action upon the ground that part of the mortgaged property was intoxicating liquor.; that the bank, having no permit to sell intoxicants, could not take a mortgage upon them to secure a debt. The bank sought to uphold the mortgage upon the alternative grounds that it did not know or understand that there were any intoxicating liquors among the mortgaged goods, and that all intoxicating liquors were excluded from the mortgage by oral agreement made at the time of the execution of the instrument. Verdict and judgment were rendered in favor of the plaintiff bank, and the defendant drug company prosecutes error to this court.

It is strenuously insisted that the court erred in re-

ceiving evidence in behalf of the bank tending to show that it had no knowledge or understanding that the mortgage covered intoxicating liquors, and also tending to show the contemporaneous parol agreement to exclude them from the list of mortgaged property. Upon this last point the familiar rule that parol evidence will not be received to contradict or vary the terms of written instruments is cited. Upon examination of the record we find that no objection was made to the admission of this class of testimony and it becomes, therefore, unnecessary to pass upon the question. The only testimony to which objection was made was as follows :

Ques. "Did you know there was any intoxicating liquor in the drug-store when you took the chattel mortgage?" Ans. "No, sir."

Q. "Did you understand that any intoxicating liquors were included in the chattel mortgage?" A. "No."

The admission of this testimony does not raise the question whether parol evidence of a contemporaneous oral agreement may be received to contradict or vary the terms of an instrument of contract. The testimony does not relate to the making of a mortgage, but to the existence of knowledge and understanding upon the part of the bank as to whether intoxicating liquors were contained in the stock on which the mortgage was taken. It will be observed that the language of the mortgage descriptive of the mortgaged property is very general. Intoxicating liquors are not specifically mentioned in it. If covered by it they are included in the words " all of the stock of goods, etc.," or in the words " and other personal property connected with and heretofore used in the drug-store," etc. We are quite clearly of the

opinion that in such a case as this a party may show that he did not know that such contraband articles as intoxicating liquors were included in the mortgage, and did not understand that he was, by the use of such general language, doing an act which would defeat the instrument he was endeavoring to procure.

Among other instructions the court gave the following :

"A druggist who has no permit from the probate judge to sell intoxicating liquors for medical, mechanical and scientific purposes may legitimately and properly have in his drug-store alcohol and other intoxicating liquors for the purpose of compounding and preparing tinctures, camphor and medicines which include intoxicating liquors and other ingredients,. which, when so prepared and compounded, do not come under the head of intoxicating liquors whose sale is forbidden by the prohibitory law. And alcohol and other intoxicating liquors kept for preparing and compounding medicines not forbidden to be sold under the prohibitory law may be properly included in a chattel mortgage of the stock of goods in a drug-store without making the chattel mortgage void."

The first sentence of this instruction correctly states the law, but the last sentence does not, and the court committed error in giving it. The defendant bank had no permit to sell intoxicating liquors. If they could be mortgaged to the bank they could be mortgaged for all purposes — for the purpose of sale as a beverage as well as for compounding tinctures and medicines. The mortgagor, Wheldon, could not limit the bank to the keeping and sale of the intoxicating liquors for lawful purposes. The validity of the mortgage in question did not depend upon the fact that the liquors were such as Wheldon might have kept or did keep in stock for legitimate purposes, but upon the question whether the disposition he

made of them was for a purpose prohibited by law. He mortgaged them to secure a debt, and a mortgage for this purpose is illegal and void. (*National Bank v. Gerson*, 50 Kan. 582, 32 Pac. 905; *Flersheim v. Cary*, 39 id. 178, 17 Pac. 825; *Gerlach v. Skinner*, 34 id. 86, 8 Pac. 257; *Korman v. Henry*, 32 id. 49, 3 Pac. 764.) Criticism of other instructions is made, but without just foundation. However, for the error in the one above quoted the judgment is reversed and a new trial is ordered.

JOHNSTON, J., and ALLEN, J., concurring.

DOSTER, C. J. (concurring specially) : I concur in the decision of this case. However, I do not feel entirely assured of the correctness of the ruling made in support of the testimony to which objection was taken. Parol testimony of what a party to such an instrument as the one in question knew was included in a stock of mortgaged goods is so nearly like parol testimony to contradict, vary or explain the language used, that I think it would be better to seek justification for its introduction in the established rules of evidence. That justification can be found. The rule that parol testimony is not receivable to contradict or vary instruments of contract applies only in controversies between the parties to the instrument and their privies, and does not apply in controversies between strangers, or in controversies between a party to the instrument on one side and a stranger to it on the other. ( 2 Whar. Ev., § 923; 2 Tayl. Ev., §§ 817, 818.)

" Nor are strangers to the instrument concluded by its terms, or estopped to show by parol evidence that the contract of the parties is different from what it purports to be on the face of the writing; and as es-

toppels where they exist must be mutual, it follows that in a controversy with strangers to the instrument the parties to it are not themselves estopped to explain or contradict it by parol evidence.'' ( *Strader v. Lambeth*, 7 B. Mon. 590.)

The rule referred to is doubtless subject to qualifications, perhaps to exceptions, but it applies as stated to the facts of this case.